# In the United States Court of Federal Claims

No. 23-1800
(Filed Under Seal: January 22, 2024)
(Reissued for Publication: February 12, 2024)[1]

```
*****************************************
ROCKWELL COLLINS, INC.,                  *
                                         *
                 Plaintiff,              *
                                         *
         v.                              *
                                         *
THE UNITED STATES,                       *
                                         *
                 Defendant.              *
*****************************************
```

*Anuj Vohra*, Crowell & Moring LLP, Washington, DC, counsel for Plaintiff. With whom were *Louis A. Chiarella* and *Roxanne N. Cassidy*, of counsel.

*Amanda L. Tantum*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom was *Lawrence M. Anderson*, Air Force Commercial Litigation Field Support Center, United States Department of the Air Force, of counsel.

## OPINION AND ORDER

**DIETZ, Judge.**

Rockwell Collins, Inc. ("Collins") protests a decision by the United States Department of the Air Force ("Air Force") to cancel a solicitation seeking proposals to refresh the center console Fuel System and Flight Display System on the KC-135 Stratotanker ("KC-135") aircraft. Collins contends that the Air Force's cancellation decision lacked a reasonable justification and was contrary to law and that the Air Force improperly failed to consider whether Collins' proposal met the solicitation requirements. Because the Court finds that the Air Force's

---

[1] This Opinion and Order was filed under seal on January 22, 2024, *see* [ECF 37], in accordance with the Protective Order entered on October 19, 2023, *see* [ECF 10]. The parties were given an opportunity to identify protected information, including source selection information, proprietary information, and confidential information, for redaction. The parties filed a joint status report on February 5, 2024, in which the government proposed three categories of redactions. [ECF 41]. The Court held a status conference on February 12, 2024, during which the government provided additional rationale for its proposed redactions. [ECF 43]. The Court adopts the government's proposed redactions, which are indicated by bracketed asterisks, *e.g.*, "[* * *]."

The government also filed an unopposed motion for relief from judgment pursuant to Rule 60(a) of the Rules of the United States Court of Federal Claims on February 6, 2024, seeking corrections to the opinion and order. [ECF 42]. The Court granted the government's motion on February 12, 2024, and the corrections are reflected herein.

cancellation decision lacked a rational basis, Collins' motion for judgment on the administrative record is **GRANTED**, and the government's cross-motion is **DENIED**. Additionally, Collins' motion to complete the administrative record is **GRANTED-IN-PART** and **DENIED-IN-PART**, Collins' motion to supplement the administrative record is **DENIED**, and the government's partial motion to dismiss Collins' request for bid and proposal costs as unripe is **GRANTED**.

I.   **BACKGROUND**

The KC-135 is an aircraft "designed to provide robust, sustained [Air Refueling] capability to support joint, allied, and coalition air forces, and specialized national defense missions." AR 201.[2] Other aircraft "develop and execute their missions based upon the advertised capabilities of the KC-135 to refuel these airborne aircraft effectively and efficiently." *Id.* [* * *]. To ensure the KC-135's sustainability, availability, and operability, the Air Force conducted market research to evaluate options to address [* * *]. AR 829. The Air Force issued multiple Requests for Information ("RFIs") seeking recommendations for potential updates to the KC-135's center console and information about the capabilities of potential offerors. AR 830. The Air Force received responses from Collins and several other potential offerors. AR 830-32, 854-57. On September 6, 2023, the Air Force issued Request for Proposal ("RFP") No. FA810523RB004 ("the Solicitation") seeking to refresh the Fuel System and Flight Display System through the Center Console Refresh ("CCR") program. AR 201, 736. [* * *]. AR 869.

Concurrent with its proposal submission, Collins filed a pre-award protest asserting that the Air Force's use of Fixed-Price, Incentive Fee ("FPIF") Contract-Line Item Numbers ("CLINs") "violates the commercial-product mandate at [Federal Acquisition Streamlining Act ('FASA')] and [Federal Acquisition Regulation ('FAR')] 10.001," and that the Solicitation's liquidated damages provision was arbitrary and unlawful. Compl. [ECF 1] ¶¶ 69, 77. After the Court issued its Scheduling Order, the government filed a notice of corrective action. [ECF 21]. In the notice, the government stated that "[t]he Air Force will cancel the current solicitation, reassess its needs/requirements, communicate further with the industry concerning possible contractor solutions to meeting the agency's requirements, reassess the need for and amount of liquidated damages, and explore further all potential commercial solutions." *Id.* at 1. The Contracting Officer ("CO") issued a Memorandum for Record ("MFR") in support of its cancellation decision. AR 867. The CO "confirm[ed] the final decision . . . to cancel the [CCR] solicitation . . . in accordance with [FAR] 15.206(e)." *Id.* She further explained that "[t]he decision to cancel the solicitation was predicated by several key factors [including] 1) feedback received from industry after close of the solicitation and 2) the filing of a bid protest on 19 Oct 2023 by Rockwell Collins, Inc." *Id.*

In the MFR, under key factor 1, the CO stated the following:

[* * *]

---

[2] The Court cites to the administrative record, filed by the government at [ECF 27] on December 1, 2023, as "AR ___."

AR 867. In the MFR, the CO memorialized the pertinent information stemming from the letters. *Id*. The CO explained that [* * *] companies provided "various recommendations to improve evaluation criteria supporting future cost savings to the Government." *Id.* The CO also noted that "[o]ne respondent specifically stated [that] [] [* * *]." *Id.* The CO emphasized that "[* * *] respondents made similar statements that the requirement appeared to be written to benefit only 'entrenched companies' or one contractor over all potential offerors." *Id.* However, the CO noted that none of the respondents identified "the agency's acquisition strategy in seeking a [FPIF] contract type, nor the agency's reliance on commercial products and matters concerning the value of the Liquidated Damages as having any bearing or influence on the reason for the companies not submitting a proposal to the solicitation." AR 867. Based on the industry feedback, the CO "determined there were potential barriers to full and open competition that precluded multiple offerors from responding to the solicitation." AR 867-68. She therefore "elect[ed] to re-evaluate the requirements and potentially revise or update the acquisition strategy to release a new solicitation to maximize competition." AR 868.

Under key factor 2, the CO summarized Collins' bid protest grounds and stated that the "bid protest outlines several issues the Government will take under consideration and re-evaluate." AR 868. She further stated the following:

> While the Government believed that the FPIF contract type, commerciality, and liquidated damages was appropriate at the time of solicitation release and was based on solid rationale, after receiving Collin[s'] protest and reviewing their allegations, and in light of [* * *] it was determined that these items should be taken under consideration for potential re-evaluation.

AR 868-69. She concluded that, for the reasons set forth in the MFR "and in reliance on FAR 15.206(e)," the Solicitation is canceled. AR 869.

Collins moved to amend its complaint to challenge the Air Force's cancellation decision. Second Amended Compl. [ECF 24]. The Court granted Collins' motion and issued a second Scheduling Order for briefing on the Air Force's decision to cancel the Solicitation. [ECF 26]. Collins moved for judgment on the administrative record, [ECF 29], and concurrently moved to complete and supplement the administrative record, [ECF 30]. The government cross-moved for judgment on the administrative record and for partial dismissal as to Collins' request for bid and proposal costs. [ECF 32]. The motions are fully briefed, and the Court held oral argument on January 11, 2024. *See* [ECF 26].

## II.     LEGAL STANDARDS

### A.     Bid Protest

The Tucker Act grants this Court jurisdiction "to render judgment on an action by an interested party objecting to . . . a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." *See* 28 U.S.C. § 1491(b)(1). The Tucker Act's waiver of sovereign immunity "covers a broad

3

range of potential disputes arising during the course of the procurement process." *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380-81 (Fed. Cir. 2012). This Court's jurisdiction extends to a challenge to the government's cancellation of a solicitation. *See MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503, 524 (2011) (holding that the government's arbitrary cancellation of a solicitation would be a violation of regulation in connection with a procurement); *see also Tolliver Grp., Inc. v. United States*, 151 Fed. Cl. 70, 85 (2020).

Under Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"), a party may file a motion for judgment on the administrative record to assess whether a federal administrative body acted in accordance with the legal standards governing the decision under review. *Agile Def., Inc. v. United States*, 143 Fed. Cl. 10, 17 (2019). An RCFC 52.1 motion "is often an appropriate vehicle to scrutinize an agency's procurement actions because such cases typically involve interpretation of contract documents or regulations, thereby presenting no disputed issues of material fact." *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1352 (Fed. Cir. 2004). A motion for judgment on the administrative record "provide[s] for trial on a paper record, allowing fact-finding by the trial court." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). This Court's inquiry is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

This court reviews bid protests using the standard of review set forth in the Administrative Procedure Act ("APA"), *see* 28 U.S.C. § 1491(b)(4), which permits the court to set aside an agency's contracting decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2018); *see Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1080 (Fed. Cir. 2001). The court may set aside an agency decision if "the procurement official's decision lacked a rational basis" or "the procurement procedure involved a violation of regulation or procedure." *WellPoint Mil. Care Corp. v. United States,* 953 F.3d 1373, 1377 (Fed. Cir. 2020). The "arbitrary or capricious standard . . . is highly deferential" to the agency's decision and "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). A protestor "bears a heavy burden of showing that the . . . decision had no rational basis." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001) (cleaned up). In addition to showing that the government's actions were arbitrary, capricious, or otherwise not in accordance with law, the protestor must "show that it 'was prejudiced as a result – that it had a substantial chance to receive the award but for that error.'" *Newimar S.A. v. United States*, 160 Fed. Cl. 97, 128 (2022) (quoting *Banknote Corp. of Am., Inc. v. United States*, 56 Fed. Cl. 377, 386-87 (2003), *aff'd*, 365 F.3d 134 (Fed. Cir. 2004)).

"Ordinarily, the government's designation of an administrative record is entitled to a presumption of completeness." *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019). The agency-assembled record, however, "is not always a complete record of documentary materials generated during the procurement and maintained contemporaneously with the occurrence of the salient events or actions associated with the procurement[.]" *Pitney Bowes Gov't Sols., Inc. v. United States*, 93 Fed. Cl. 327, 331 (2010). While an agency

"exercise[s] some judgment in furnishing the court with relevant documents," *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345, 350 (1997), it "does not possess the discretion to makes these records whatever it says they are." *East West, Inc. v. United States*, 100 Fed. Cl. 53, 56 (2011). "[A]llowing the agency to retroactively delineate the scope of review may preclude the 'substantial inquiry' and 'thorough, probing, in-depth review' the court must perform" in reviewing an agency decision. *Mike Hooks, Inc. v. United States*, 39 Fed. Cl. 147, 156 (1997) (quoting *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 415 (1971)). As such, the presumption of completeness that attaches to the agency-assembled record "can be rebutted with clear evidence" that the agency omitted from the record information that it relied upon in reaching its final decision. *Poplar Point*, 145 Fed. Cl. at 494. When the contents of the agency-assembled administrative record are questioned, a protester may move to complete the record. *Id.* A motion to complete the administrative record seeks to add materials that are relevant to the challenged agency decision and were considered by the agency in reaching its decision or generated during the decision-making process. *BHB Ltd. P'ship v. United States*, 147 Fed. Cl. 226, 229 (2020); *see also Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 167 (2011). In contrast to a motion to complete, a motion to supplement the administrative record "seeks to add materials that the agency did not consider but should be considered to permit a proper evaluation of the agency's decision." *Poplar Point*, 145 Fed. Cl. at 494. The United States Court of Appeals for the Federal Circuit has instructed that "supplementation of the record should be limited to cases in which the omission of extra-record evidence precludes effective judicial review." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (internal quotation marks omitted).

**B.    Motion to Dismiss**

Under RCFC 12(b)(1), the court must grant the government's motion to dismiss if it finds that it lacks jurisdiction over the plaintiff's claim. *Awad v. United States*, 61 Fed. Cl. 281, 283 (2004); RCFC 12(h)(3). "When deciding a motion to dismiss for lack of subject matter jurisdiction under [RCFC] 12(b)(1), the court must accept as true all undisputed facts asserted in the complaint and draw reasonable inferences in favor of the plaintiff." *Bitscopic, Inc. v. United States*, 166 Fed. Cl. 677, 696 (2023) (citing *Acevedo v. United States*, 824 F.3d 1365, 1368 (Fed. Cir. 2016)). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Groundbreaker Dev. Corp. v. United States*, 163 Fed. Cl. 619, 623 (2023) (citing *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011)).

Ripeness is a doctrine that "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also . . . protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1362 (Fed. Cir. 2008) (*TKS*) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967)). "There is no jurisdiction to hear a case that is not ripe," and the plaintiff bears the burden to establish that its claim is ripe for adjudication. *Morris v. United States*, 58 Fed. Cl. 95, 97 (2003) (citations omitted).

### III. THE PARTIES' CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Collins asserts that "[t]he Air Force's cancellation of the RFP lacked a reasonable justification," [ECF 29] at 25; "[t]he Air Force's cancellation decision was contrary to law [because] no authority allows an agency to cancel an RFP simply because it is disappointed in [* * *]," *id.* at 35; and "[t]he Air Force's failure to consider whether Collins' proposal met the RFP's stated requirement before canceling the solicitation was improper," *id.* at 40.[3] The government rejects these arguments, contending that "the Air Force's decision to cancel the solicitation was reasonable." [ECF 32] at 19. As explained below, the Court finds that the Air Force's cancellation decision lacked a rational basis and that Collins is entitled to injunctive relief.

#### A. Collins' Assertion that the Air Force Lacked a Reasonable Basis to Cancel the Solicitation

Collins contends that the two factors cited in the MFR do not provide a reasonable basis for the Air Force's cancellation of the solicitation. [ECF 29] at 25-26. Collins also argues that the Air Force's failure to identify a substantial change in its requirements is contrary to FAR 15.206(e). *Id.* at 35. The Court finds that the Air Force did not provide a rational basis for its cancellation decision because the CO relied exclusively on FAR 15.206(e) to cancel the Solicitation but did not identify a proposed amendment to the government's requirements or terms and conditions as required by that provision.

The CO began the MFR by stating that the cancellation is "in accordance with [FAR] 15.206(e)." AR 867. She then specified two factors on which the cancellation decision was predicated: industry feedback and Collins' bid protest. AR 867-69. Under the first factor, the CO stated that, based on industry feedback, "there were potential barriers to full and open competition that precluded multiple offerors from responding to the solicitation." AR 867-68. The CO indicated that the Air Force would "re-evaluate the requirements and potentially revise or update the acquisition strategy to release a new solicitation to maximize competition." AR 868. Under the second factor, the CO stated that the Air Force will take Collins' bid protest allegations "under consideration for potential re-evaluation." AR 868-69. She further stated that the Air Force "intends to further research whether [its] strategy could be revised to allow for greater competition" in light of [* * *]. AR 869. For these reasons "and in reliance on FAR 15.206(e)," the CO cancelled the Solicitation. *Id.*

FAR 15.206 pertains to amendments to a solicitation. FAR 15.206(a) requires that the CO issue an amendment to the solicitation when the government "changes its requirements or terms and conditions." With respect to a proposed amendment, FAR 15.206(e) states in its entirety:

> If, in the judgment of the [CO], based on market research or otherwise, an amendment proposed for issuance after offers have been received is so substantial as to exceed what prospective offerors reasonably could have anticipated, so that additional

---
[3] All page numbers in the parties' briefings refer to the page numbers generated by the CM/ECF system.

> sources likely would have submitted offers had the substance of the amendment been known to them, the [CO] shall cancel the original solicitation and issue a new one, regardless of the stage of the acquisition.

Thus, FAR 15.206(e) mandates that the CO cancel the solicitation when there is a proposed amendment that is determined by the CO to meet the requisite level of substantiality. *See Madison Servs., Inc. v. United States*, 92 Fed. Cl. 120, 126 (2010). The CO can violate FAR 15.206(e) by invoking it as the basis for a cancellation decision and failing to adequately explain why such cancellation was mandated by its terms. *See Seventh Dimension, LLC v. United States*, 160 Fed. Cl. 1, 30-32 (2022).

The Court finds that the Air Force lacked a rational basis to cancel the Solicitation because the Air Force invoked FAR 15.206(e) to cancel the Solicitation but failed to identify a proposed amendment that triggered the cancellation mandate. There is no dispute that in the MFR, the CO cited FAR 15.206(e). *See* AR 867 (cancelling the Solicitation "in accordance with [FAR] 15.206(e)"); AR 869 ("For the reasons set forth above and in reliance on FAR 15.206(e), [the Solicitation] is cancelled"). By cancelling the Solicitation "in accordance with" and "in reliance on" FAR 15.206(e), the Air Force invoked that FAR provision to justify its cancellation decision. *See BAE Sys. Norfolk Ship Repair, Inc. v. United States*, 163 Fed. Cl. 217, 227 (2022) (finding that the Navy's "cancelling the solicitation pursuant to FAR 15.206(e)" was an invocation of that FAR provision). The Court must therefore determine whether the Air Force had a rational basis for cancelling the Solicitation under FAR 15.206(e).

Here, the CO did not identify an amendment proposed for issuance. The FAR does not define "an amendment proposed for issuance." To interpret this FAR provision, the Court reads it in the context of its FAR section. *See Boeing Co. v. Sec'y of Air Force*, 983 F.3d 1321, 1327 (Fed. Cir. 2020) ("And it is well established that, when interpreting statutes or regulations, '[t]he plain meaning that we seek to discern is the plain meaning of the whole statute [or regulation], not of isolated sentences'") (alterations in original) (quoting *Beecham v. United States*, 511 U.S. 368, 372 (1994)). Under FAR 15.206(a), when "the Government changes its requirements or terms and conditions, the [CO] shall amend the solicitation." An "amendment proposed for issuance," therefore, must be a proposed change in the government's requirements or terms and conditions. The CO, however, does not identify a proposed change to the government's requirements or terms and conditions. Further, the government appears to concede as much. *See* [ECF 32] at 33 ("In fact as Collins notes . . . the Air Force did not 'propose[]' any 'amendment . . . for issuance' as described in FAR 15.206(e); instead, it first had to re-assess its requirements and consider changes to the original solicitation terms."); *see also* Oral Argument on Mot. for J. on Admin. R. at 46:18-46:23, *Rockwell Collins, Inc. v. United States*, No. 23-1800 (Fed. Cl. Jan. 11, 2024) [hereinafter Oral Argument] ("It is apparent from the memorandum that there is no written proposed amendment right now"). Furthermore, the Court's examination of the first and second key factors in the MFR supports this conclusion.

Under the first key factor, the CO states that "[t]he government elects to re-evaluate the requirements and potentially revise or update the acquisition strategy to release a new solicitation to maximize competition." AR 867-68. This is not a proposed amendment because it does not set

forth any proposed change to the Solicitation's requirements or terms and conditions. The United States Court of Federal Claims has upheld cancellation decisions under FAR 15.206(e) where the agency identified a proposed change to the government's requirements. *See BAE Sys.*, 163 Fed. Cl. at 237 (sustaining cancellation decision where agency cancelled solicitation under FAR 15.206(e) to relax a ten percent docking requirement); *see also Madison Servs.*, 92 Fed. Cl. at 129 (sustaining cancellation decision where agency cancelled solicitation under FAR 15.206(e) to facilitate a change in the number of housing storage sites). The record in this case lacks such a change. Instead, the record indicates that the government has not decided whether or how to change the substance of its current requirements. For example, the CO states that the government will "*potentially* revise or update the acquisition strategy." AR 868 (emphasis added). Merely contemplating revisions or updates to the acquisition strategy or methods to maximize competition does not constitute an amendment proposed for issuance.

      The CO's rationale under the second key factor fares no better. Under the second key factor, she states that the Air Force "will take under consideration and re-evaluate . . . the [FPIF] contract type, commerciality, and liquidated damages." AR 868. Again, this does not indicate any proposed change. Moreover, even if the Court were to view this statement as a proposed change to the Solicitation, it is unclear from the record whether such a change would be "so substantial" that [* * *] likely would have submitted an offer had the change been known to them. The CO's judgment "in assessing whether cancellation is required must be 'based on *evidence* or *facts* in the administrative record,' not assumptions or conjecture." *BAE Sys.*, 163 Fed. Cl. at 230 (emphasis in original) (quoting *Seventh Dimension*, 160 Fed. Cl. at 26). In other words, the CO "must have 'a *reasonable basis* for concluding that a proposed amendment rises to the level contemplated by the regulation.'" *Id.* (emphasis in original) (quoting *Madison Servs.*, 92 Fed. Cl. at 126). Here, the CO cannot reasonably conclude that a change to these terms and conditions in the Solicitation would rise to the requisite level of substantiality. The CO states in the MFR that the responses received from industry "did not identify the agency's acquisition strategy in seeking a [FPIF] contract type, nor the agency's reliance on commercial products and matters concerning the value of the Liquidated Damages as having any bearing or influence on the reason for the companies not submitting a proposal to the solicitation." AR 867. Therefore, it appears that Collins' initial bid protest grounds did not affect [* * *] decisions to not submit a proposal. Nevertheless, without identifying a proposed amendment to the Air Force's requirements or terms and conditions, the CO could not reasonably assess the level of substantiality to determine whether cancellation was mandated under FAR 15.206(e).

      The government argues that FAR 15.206(e) is not the only the regulation under which the Air Force could cancel the Solicitation and contends that the cancellation was reasonable under FAR 15.305(b). *See* [ECF 32] at 31. FAR 15.305(b) states that "[t]he source selection authority may reject all proposals received in response to a solicitation, if doing so is in the best interest of the Government." In *Madison Services*, the court interpreted FAR 15.305(b) as an "extraordinarily permissive standard [that] requires nothing more than a reasonable basis for the cancellation decision" and that provides the CO with "broad discretion to cancel a negotiated procurement." 92 Fed. Cl. at 126, 129. Relying on *Madison Services*, the government contends that "like FAR 15.305(b), 'all that FAR 15.206(e) requires is a reasonable basis for the [CO's] decision.'" [ECF 32] at 33 (alteration in original) (quoting *Madison*, 92 Fed. Cl. at 128). However, the government's reliance on FAR 15.305(b) fails to consider that the touchstone for

8

the Air Force's cancellation decision is FAR 15.206(e). FAR 15.206(e) does not provide the CO with broad permission to cancel a solicitation for any reason. To the contrary, it mandates that the CO cancel the solicitation when faced with a proposed amendment that the CO determines to be substantial under FAR 15.206(e). In this case, the CO did not identify a proposed amendment that triggered the FAR 15.206(e) cancellation mandate, so the CO did not provide a rational basis for the cancellation. *See Madison Servs.*, 92 Fed. Cl. at 126 (stating "[c]learly, however, in order to invoke FAR 15.206(e) in support of her decision to cancel a negotiated procurement, a contracting officer need only have a reasonable basis for concluding that a proposed amendment rises to the level contemplated by the regulation").

In addition, the administrative record is clear that the CO did not reject Collins' proposal under FAR 15.305(b). Instead, the CO cancelled the Solicitation exclusively under FAR 15.206(e). The CO stated that "*in reliance on FAR 15.206(e)*, [the Solicitation] is cancelled." AR 869 (emphasis added). "It is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" *Dept. of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. ----, 140 S. Ct. 1891, 1907 (2020). Because the Air Force's "cancellation decision gave a 'determinative reason for the final action taken,' the Justice Department may not come into this Court and 'provide new ones.'" *BAE Sys.*, 163 Fed. Cl. at 227-28 (quoting *Regents*, 140 S. Ct. at 1908). "Allowing the government to argue that the [Air Force's] 'broad discretion' in cancelling solicitations permitted what was done here regardless of FAR 15.206(e) would be just the type of impermissible 'post hoc rationalization' the Supreme Court has forbidden." *Id.* (citing *Citizens to Pres. Overton Park*, 401 U.S. at 420). Because "the CO and the government . . . point to no facts in the administrative record justifying the [Air Force's] cancellation of the Solicitation pursuant to FAR 15.206(e)," the CO did not have a rational basis to cancel the Solicitation. *Seventh Dimension*, 163 Fed. Cl. at 32.

Lastly, Collins has shown that it was prejudiced by the Air Force's improper cancellation decision. To demonstrate prejudice, Collins must show that but for the alleged error, it would have had a substantial chance at being awarded the contract. *See Newimar S.A.*, 160 Fed. Cl. at 128. [* * *]. Accordingly, the Air Force's improper cancellation of the Solicitation prejudiced Collins.

      **B.**    **Collins is Entitled to Injunctive Relief**

Collins requests that the Court provide the following relief: "1. Enjoin the Air Force's cancellation of the RFP; 2. Order the Air Force to reinstate the RFP and evaluate Collins' proposal; and 3. Grant any other such relief as the Court may deem just and appropriate, including but not limited to Collins' bid and proposal costs." [ECF 29] at 46. The Tucker Act empowers the Court to "award any relief that the court considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2). When determining whether to grant a permanent injunction, the Court must consider whether "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). Collins has succeeded on the merits, so the Court must now consider

whether Collins will suffer irreparable harm, whether the balance of hardships favors granting an injunction, and whether the public interest is served by an injunction.

The Court finds that Collins is entitled to injunctive relief because the remaining injunctive relief factors weigh in favor of granting such relief. *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) ("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable relief factors must be considered, as well.") (citing *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004)). First, Collins will suffer irreparable harm without injunctive relief. Collins asserts that it "will immediately and irreparably be harmed by the lost time and resources that it has expended to prepare its proposal in response to the original RFP." [ECF 29] at 43. Collins' loss of the opportunity to be considered for a contract award under the Solicitation and its corresponding loss of potential profits constitute irreparable injury. *See MORI*, 102 Fed. Cl. at 554 (finding that "MORI's loss of the opportunity to compete for the provision of the Help Desk services, and its corresponding loss of potential profits, constitute irreparable injury for purposes of injunctive relief."). Next, the balance of harms weighs in favor of Collins. [* * *]. Finally, an injunction would serve the public interest. By enjoining the Air Force from proceeding with its improper cancellation of the Solicitation, the Court is preserving the integrity of the procurement process by requiring the Air Force to follow procurement regulations, which serves the public interest. *PGLS, LLC v. United States*, 152 Fed. Cl. 59, 72 (2020) (quoting *Superior Optical Labs, Inc. v. United States*, 150 Fed. Cl. 681, 695 (2020)); *see also Ernst & Young, LLP v. United States*, 136 Fed. Cl. 475, 519 (2018). Because all four factors weigh in Collins' favor, Collins is entitled to injunctive relief.

When issuing a permanent injunction, the Court "tailors that relief so that any harm to the government, private parties, and the public interest is minimized." *SAGAM Securite Senegal v. United States*, 154 Fed. Cl. 653, 673 (2021) (citing *Heritage of Am., LLC v. United States*, 77 Fed. Cl. 66, 79 (2007)). In this case, the Court vacates the Air Force's cancellation of the Solicitation based on the MFR and orders the Air Force to reinstate the Solicitation. Although Collins requests that the Court order the Air Force to evaluate its proposal, [ECF 29] at 46, the Court is not in the position to oversee the Air Force's procurement process, and the Court refrains from interfering with the Air Force's discretionary decision-making. *See Beta Analytics Int'l, Inc. v. United States*, 69 Fed. Cl. 431, 432 (2005); *see also Parcel 49C Ltd. P'ship v. United States*, 31 F.3d 1147, 1154 (Fed. Cir. 1994) (explaining that injunctive relief is appropriate "without interfering with the Government's discretion to select its own contractors.").

### IV. COLLINS' MOTION TO COMPLETE AND SUPPLEMENT THE ADMINISTRATIVE RECORD

Collins argues that the "record should be completed with the exhibits appended to Collins' October 13, 2023 complaint." Pl.'s Mot. to Complete the Admin. R. [ECF 30] at 2. Collins states that "[t]he Administrative Record includes Collins' October 13, 2023 Complaint but does not include the exhibits attached thereto" and that "[t]here is no reasonable or defensible basis for the government to have included only part of the document, and for that reason alone, the record should be completed with the exhibits[.]" *Id.* at 4. The government does not oppose

Collins' motion to complete the administrative record with the exhibits in Collins' October 13, 2023, complaint, except for a declaration attached as Exhibit 19. Def.'s Mot. to Strike and Opposition to Pl.'s Mot. to Complete the Admin. R. [ECF 31] at 14. The government states that the "declaration should not be included in the administrative record" because it "post-dates the agency decision and relates to Collins' alleged bid preparation and proposal costs." *Id.* Instead, the government states that the Court should "deny Collins' motion to add this declaration to the administrative record and consider it only for purposes of reviewing the relief sought by Collins." *Id*. The Court grants Collins' motion to complete the administrative record with Exhibits 1 through 18 of its complaint. However, the Court denies Collins' motion to complete the record with the declaration attached as Exhibit 19 because it is not relevant to the Air Force's cancellation decision, nor was it considered by the Air Force in making its decision or generated during the decision-making process. *See BHB Ltd. P'ship*, 147 Fed. Cl. at 229.

Collins also argues that the record should be supplemented with its October 13, 2023, proposal and an email exchange between the Air Force and another contractor. [ECF 30] at 5. The government opposes Collins' motion to supplement the administrative record with Collins' proposal on the basis that Collins does not demonstrate "that the omission of the proposal from the record 'precludes effective judicial review.'" [ECF 31] at 9 (quoting *Axiom*, 564 F.3d at 1380)). The government also opposes supplementation of the record with the email exchange on the basis that the emails were sent "well after the Air Force's decision to cancel the solicitation." *Id.* at 11. As explained above, Collins has succeeded on the merits of its bid protest based on the existing administrative record. Therefore, the Court denies Collins' motion to supplement the administrative record because the documents that Collins seeks to include in the record are not necessary for effective judicial review of the Air Force's cancellation decision. *See Axiom Res.*, 564 F.3d at 1380.[4]

## V.   THE GOVERNMENT'S MOTION TO DISMISS

The government contends that "Collins' request that the Court award its 'bid and proposal costs' is not ripe," and therefore, "the Court should dismiss Collins'[] request for such costs without prejudice." [ECF 32] at 46. The United States Court of Appeals for the Federal Circuit has held that "[w]ith respect to the 'fitness of the issue for judicial decision,' it is clear that non-final agency action is not ripe for review." *TKS*, 529 F.3d at 1362 (citing *U.S. Ass'n of Imps. of Textiles & Apparel v. U.S. Dep't of Com.*, 413 F.3d 1344, 1349-50 (Fed. Cir. 2005)). The Federal Circuit in TKS explained:

> As a general matter, two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

---

[4] The government requests that the Court "strike or disregard" portions of Collins' briefing that rely on extra-record materials. [ECF 31] at 14-15. For this opinion, the Court has disregarded those portions of Collins' briefing and related arguments that rely on extra-record materials.

11

*TKS*, 529 F.3d at 1362 (internal quotation marks omitted).

Collins' request for bid and proposal costs is not yet ripe because there is no final action by the Air Force. As explained above, the Court has vacated the Air Force's improper cancellation of the Solicitation and reinstated it. Thus, the Air Force's decision-making process with respect to the Solicitation is pending. Furthermore, Collins conceded at oral argument that if the Court issues an injunction, its claim for bid and proposal costs is not yet ripe. Oral Argument at 41:30-41:47 ("If the decision of the Court is to issue an injunction that requires the agency to do something to address the issues that we raised in our proposal, at that point, I would agree that our claim for bid and proposal costs is not ripe."). Therefore, the Court grants the government's motion to dismiss Collins' request for bid and proposal costs. *See Morris*, 58 Fed. Cl. at 97 (stating that "[t]here is no jurisdiction to hear a case that is not ripe").

## VI.  CONCLUSION

For the foregoing reasons, Collins' motion for judgment on the administrative record [ECF 29] is **GRANTED**. The government's partial motion to dismiss and cross-motion for judgment on the administrative record [ECF 32] is **GRANTED-IN-PART** and **DENIED-IN-PART**. The government's partial motion to dismiss Collins' request for bid and proposal cost under RCFC 12(b)(1) is **GRANTED**, and its cross-motion for judgment on the administrative record is **DENIED**. Collins' request for bid and proposal costs is dismissed without prejudice.

Additionally, Collins' motion to complete and supplement the administrative record [ECF 30] is **GRANTED-IN-PART** and **DENIED-IN-PART**. Collins' motion to complete is **GRANTED** as explained in this opinion, and its motion to supplement is **DENIED**.

Collins is entitled to injunctive relief. The Air Force's cancellation of the Solicitation is **VACATED**, effectively immediately. The Air Force is **ORDERED** to reinstate the Solicitation. The Clerk is directed to enter judgment accordingly.

Some information contained in this Opinion and Order may be considered protected information subject to the Protective Order [ECF 10] entered on October 19, 2023. Accordingly, the Opinion and Order is **FILED UNDER SEAL**. The parties **SHALL CONFER** and **FILE on or before February 5, 2024**, a joint status report that: identifies information, if any, that the parties contend should be redacted; explains the basis for each proposed redaction; and includes an attachment of the proposed redactions for this Opinion and Order.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz  
THOMPSON M. DIETZ, Judge